

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI EX REL., ORGANIC REMEDIES MO, INC., | ) ) ) | No. ED111005 |
| Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | 21SL-CC04668 |
| BOARD OF ZONING ADJUSTMENT OF ST. LOUIS COUNTY, MISSOURI, | ) ) ) | Honorable Nancy W. McLaughlin |
| Respondent. | ) | Filed: August 29, 2023 |

## OPINION

Organic Remedies Mo, Inc. (Organic) appeals from a decision by the St. Louis County Board of Zoning Adjustment (Board) denying a nonuse variance to construct a drive-through lane between its building and Concord Village Avenue for medical marijuana patients to pick up prescriptions.  We affirm.

## Background

Organic submitted a site plan to the Board in the spring of 2021, proposing a medical marijuana dispensary at 11420 Concord Village Avenue, which was approved on August 19, 2021.  Organic subsequently submitted a second site plan with an application for a nonuse variance from the zoning requirements for a non-conforming drive-through between the building on the property and the road in front of it, Concord Village Avenue.

A medical marijuana dispensary is a permitted use pursuant to the St. Louis County Zoning Ordinances.[1]  However, "[a]ll drive-through areas, including but not limited to menu boards, stacking lands, trash receptacles, loud speakers, drive up windows, and other objects associated with the drive-through area shall be located in the side or rear yard of a property and shall not cross, interfere with, or impede any public right-of-way."  SLCRO Section 1003.165.6(2)(b)(ii).  A "front yard" is defined as "[a] space extending across the entire front of a lot between the structure setback line as required by the regulations of a particular zoning district and the roadway right-of-way line."  SLCRO Section 1003.020(164).

The Board held a public hearing on Organic's variance request on September 8, 2021, during which the St. Louis County zoning administrator (County) presented evidence that Organic's building had two front yards within the meaning of the zoning code, and that the proposed drive-through violated SLCRO Section 1003.165 because it was not located in a side or rear yard of the property.  The County opined that the irregular site was common and did not constitute "a unique condition or practical difficulty in meeting the requirements of the zoning ordinance" and claimed the variance would serve merely as a convenience.  The County asked the Board to deny the requested variance.

Organic presented evidence of its intent to utilize the property as a centralized drive-through for Missouri medical marijuana patients because curbside pickup was not allowed, some patients have limitations that cause a hardship in getting out of their cars, and certain regulations must be followed for individuals to pick up another person's medication.  Organic did not dispute the building had two front yards, but argued the intended use could not be achieved because the existing building is positioned at the extreme corner of the property, and there is no

---

[1] Unless otherwise indicated, all references to St. Louis County zoning ordinances are to St. Louis County Revised Ordinances (SLCRO) (2021).

physical rear or side area in which to place a drive-through to comply with the ordinance.
Organic asserted that the proposed drive-through would be utilized by appointment only, limited
to seven pickups an hour with an average of six minutes per transaction, and traffic would be
significantly less than that of other drive-throughs in the area. Organic submitted letters of
support from neighboring businesses as well.

At the end of the hearing, the Board chairman stated as follows:

> As far as I'm concerned, the address, the numerical address and the street are, for
> me, what is the front of the building. That's my perception of what the front of a
> building is. So . . . earlier on in 2015 the Planning Commission decided on no
> front yards for drive-thrus [sic]. So given those two points and going out to the
> property and giving it much thought, I'm going to vote to deny it. I just don't feel
> there's enough of a hardship to go against what the Planning Commission decided
> on and even though those other 2 buildings have drive-thrus [sic], they were
> before this – but even if they weren't, we only go – we're only talking today
> about this property and in the 25 years I've been on this Board that's all I look at.
> I don't look at what other properties have or residences. So I'm going to vote to
> deny based on all of what I just said.

A second Board member also voted to deny the variance. Organic filed a writ of certiorari with
the Circuit Court of St. Louis County, which was ultimately denied. This appeal follows.

### Discussion

Organic raises three points on appeal, arguing the Board erred in denying the requested
variance. First it alleges the Board's decision is not authorized by law in that it incorrectly
applied the more rigorous standard of unnecessary hardship for a use variance rather than the
practical difficulties standard applicable to granting the nonuse variance at issue. Second,
Organic claims the Board erred because its decision is not supported by competent and
substantial evidence as the evidence shows that practical difficulties are preventing it from
operating as a medical marijuana dispensary without conflicting with the zoning code. Third, it
asserts the Board erred in denying the variance because it is not authorized by law because the

3

Board failed to issue written findings of fact and conclusions of law that would allow a meaningful review as required by Section 536.090, RSMo (2016),[2] and the zoning ordinance, SLCRO Section 1004.050.

*Standard of Review*

An appellate court reviews the findings and conclusions of the zoning board and not the judgment of the trial court. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City,* 24 S.W.3d 681, 684 (Mo. banc 2000). Although a zoning board has discretion in determining whether the facts support the decision to grant or deny a variance, Missouri's constitution specifically mandates the appellate court's role is to determine whether the board's decision exercising discretion to issue or deny a variance was "supported by competent and substantial evidence upon the whole record." *Antioch Cmty. Church v. Bd. of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 34 (Mo. banc 2018) (internal quotations omitted); Mo. Const. art. V § 18. The party seeking a variance has the burden to demonstrate that it should be granted. *Baumer v. City of Jennings*, 247 S.W.3d 105, 113-14 (Mo. App. E.D. 2008). Therefore, the "competent and substantial evidence" standard is met when the record supports the board's determination that the applicant failed to present evidence showing the facts necessary to grant the variance. *Antioch*, 543 S.W.3d at 34 n.4 ("It may seem somewhat semantically awkward to apply the 'competent and substantial evidence' standard when the issue is, as in this case, whether the board properly found the applicant did *not* present sufficient evidence to support the grant of a variance." (emphasis in original)). This court may not substitute its judgment for that of the zoning board and must view the evidence and all reasonable inferences in a light most favorable to the decision. *Id.* at 34 (quoting *Mann v. Mann*, 239 S.W.2d 543, 544 (Mo. App. 1951)).

---

[2] All statutory references are to the Missouri Revised Statutes (2016), unless otherwise indicated.

*Points I & II*

Organic's first and second points are similar and will be analyzed together. Its first point alleges the Board erred in denying the requested variance because its decision is not authorized by law in that it incorrectly applied the more rigorous standard of unnecessary hardship rather than the practical difficulties standard. Its second point asserts the Board erred in denying the variance because its decision is not supported by competent and substantial evidence in that the evidence shows that practical difficulties are preventing it from operating as a medical marijuana dispensary without conflicting with the zoning code.

The Board's authority to grant a variance is based on a showing of "practical difficulty or unnecessary hardship," pursuant to Section 89.090.1(3). It is undisputed that a nonuse variance is at issue here.[3] Therefore, Organic, the party seeking the variance, must establish practical difficulties, which are the existence of conditions *slightly* less rigorous than unnecessary hardships. *Matthew*, 707 S.W.2d at 416 (emphasis in original).

There is no precise definition of "practical difficulties." However, in *Antioch*, the Missouri Supreme Court set forth certain "guiding principles" which are premised upon a sparing exercise of the authority to grant a variance in accord with the general purpose of the zoning plan. 543 S.W.3d at 37; *see also Matthew*, 707 S.W.2d at 413. The existence of practical difficulties requiring a variance is a question of fact to be determined by the Board within the guidelines of the zoning regulation and is accorded great discretion. *See Antioch*, 543 S.W.3d at 39 (quoting *Rosedale-Skinker Improvement Ass'n v. Bd. of Adjustment of City of St. Louis*, 425 S.W.2d 929, 933 (Mo. banc 1968)).

---

[3] A "use" variance "permits a use which the ordinance prohibits." *Antioch*, 543 S.W.3d at 34 (citing *Matthew v. Smith*, 707 S.W.2d 411, 413 (Mo. banc 1986)). A "nonuse" variance permits "deviations from restrictions which relate to a permitted use." *Id.* (citing Matthew, 707 S.W.2d at 413).

The applicant must demonstrate that the practical difficulty is "unusual or peculiar to the property and must be different from that suffered throughout the zone." *Antioch*, 543 S.W.3d at 38 (citing *Matthew*, 707 S.W.2d at 415; *see, e.g.*, *Behrens v. Ebenrech*, 784 S.W.2d 827, 829 (Mo. App. E.D. 1990)). Moreover, "legislation granting relief by way of variance to zoning codes is not intended to relieve mere inconvenience." *Id.* (quoting *Volkman v. City of Kirkwood*, 624 S.W.2d 58, 61 (Mo. App. E.D. 1981)). In considering these guidelines, the Court ultimately adopted the "New York model," which at the very least, requires a nonuse variance applicant to show that as a practical matter the property cannot be utilized for a permitted use absent a conflict with an ordinance. *Antioch*, 543 S.W.3d at 38-39 (citing *Slate v. Boone County Bd. of Adjustment*, 810 S.W.2d 361, 364 (Mo. App. W.D. 1991)).[4]

Here, Organic argues the Board used the wrong standard of unnecessary hardship rather than practical difficulties; but Organic used the term "hardship" throughout the hearing. The burden was on Organic to show that, as a practical matter, its property could not be used for a permitted use – a medical marijuana dispensary – without conflicting with the zoning restriction that requires all drive-through areas be in the side or rear of the property. The record demonstrates competent and substantial evidence that Organic failed to show the property could **not** be used for a medical marijuana dispensary under the zoning code.

---

[4] The *Slate* court also considered five additional factors applied by New York courts:
> (1) how substantial the requested variance is; (2) whether the variance will result in a substantial change to the character of the neighborhood or create a substantial detriment to adjoining properties; (3) whether the violation can be cured by some method other than the granting of a variance; and (4) whether, in light of the manner in which the violation arose and considering all relevant factors, the interests of justice will be served by granting the variance.

*Antioch*, 543 S.W.3d at 41 (citing *Slate*, 810 S.W.2d at 364). However, our Supreme Court did not consider these factors in *Antioch*, but did find they "can be helpful in understanding the requirements of Section 89.090 for granting a variance, although they are not themselves elements but guidelines" in the determination of practical difficulties.

Organic attempts to expand its permitted use with its intended business use as a medical marijuana dispensary to "create a centralized location for medical marijuana patients to pick up their prescriptions from their car" to meet the challenges of certain clients. However, the Missouri Supreme Court rejected similar reasoning in favor of a variance in *Antioch*, 543 S.W.3d 28. There the church argued it was entitled to a variance under Section 89.090 because it showed the practical difficulties in using the property as a church, absent a variance permitting a digital monument sign. *Id.* at 40. The Court explained that "[w]hile the offered reasons explain why the Church finds a digital display preferable and more convenient, they do not show the practical difficulty in carrying out the Church's use of the property as a church." *Id.* Thus, the inconvenience to the church did not arise from the ban on monument signs having digital components or from any unique aspect of the property or its use as a church; it was a personal difficulty related to the particular demographics of the current church members. *Id.*

Similar to *Antioch*, we recognize the compelling reasons why Organic finds a drive-through preferable and more convenient. However, these issues do not establish a practical difficulty in achieving the permitted use as a medical marijuana dispensary. The inconvenience to Organic did not arise from the ban on drive-throughs in front yards but was premised upon the personal difficulties of certain clients who prefer to pick up prescriptions without leaving their vehicles, even though this population is free to patronize any other dispensary with such a convenience. As in *Antioch*, a variance is not intended to "relieve mere inconvenience." Therefore, Organic did not show by competent and substantial evidence it could not continue the permitted use as a medical marijuana dispensary without a variance.

In addition, Organic failed to demonstrate how any physical limitations regarding the shape of the property and location of the building in the corner of the property with no side or rear yard as required for a drive-through constituted "a unique condition or practical difficulty in

7

meeting the requirements of the zoning ordinance." In fact, the County's acting director testified the irregularly shaped lot was common for that area. Therefore, Organic did not meet its burden and show competent and substantial evidence meriting a variance due to the property's characteristics.

Organic argues the *Karelitz* opinion is applicable because there the board granted a variance to a hospital in order to add parking spaces that would encroach the setback requirement upon construction of a medical office building. *Karelitz v. Soraghan*, 851 S.W.2d 85, 90 (Mo. App. E.D. 1993). The hospital had an existing facility and parking lot, but sought to expand both. *Id.* In doing so, the hospital applied to increase an existing 20-foot variance for an off-street parking area already stretching for 1200 feet along the same street by an additional 250 feet. *Id.* at 90. The board exercised its discretion to grant the variance because it determined the hospital met its burden and demonstrated that it would encounter practical difficulties without the variance because its alternative was to tear down area homes it owned or a maintenance shed which was valuable to the hospital. *Id.*

Here, Organic purchased the property with the knowledge of the property's shape and the building's placement, and the restriction on drive-throughs existed at the time. Organic did not initially seek a variance to construct a drive-through to operate a medical marijuana dispensary. Therefore, unlike the hospital, Organic did not meet its burden in showing it could not continue its permitted use without the variance, and we accord great deference to the Board's decision.

In conclusion, we find the use of the word "hardship" in the Board's decision and in the meeting minutes was merely a repeated use of the word throughout the hearing. The record does not reflect that the Board applied the incorrect higher standard of "unnecessary hardship" in denying the variance. Rather, the record contains substantial and competent evidence to support the Board's decision to deny the variance because Organic has not shown, at the very least, that

8

it cannot operate the property as its permitted use of a medical marijuana dispensary without conflicting with the zoning code. Points one and two are denied.

*Point III*

Finally, Organic's third point alleges the Board erred in denying the variance because it is not authorized by law in that the Board failed to issue written findings of fact and conclusions of law that would allow a meaningful review as required by Section 536.090 and the zoning ordinance, SLCRO Section 1004.050. The County argues the Board's statement regarding the basis of its decision incorporated into the minutes of the Board meeting, along with the record of the members' votes was enough to satisfy the statutory requirements. We agree.

Pursuant to Section 536.090, every decision and order in a contested case "shall be in writing" and the decision "shall include or be accompanied by findings of fact and conclusions of law." The statute specifically requires the "findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order." *Id.* Organic spends much of its point arguing Section 536.090 applies to the Board, given that Chapter 64 "requires" the Board to act within its confines; however, the plain language of this statute states that county boards "may," in conformity with the provisions of the law, issue a decision or determination as ought to be made. Section 64.120.2.

Organic also cites *Complete Auto Body & Repair, Inc. v. St. Louis County*, 232 S.W.3d 722, 725 (Mo. App. E.D. 2007), for the proposition that a failure to file findings and conclusions under Section 536.090 cannot be waived by failing to object in the circuit court, but, if raised in the appellate court, the case must be remanded for the administrative agency to make the findings of fact and conclusions of law. *Id.* However, the County points out that in *Complete Auto Body*, unlike this case, the parties agreed that no findings and conclusions were made. *Id.*

9

Here, the parties disagree and the County contends the record shows both findings and conclusions on the record.

Although Organic argues this point as a last resort to remand "*[i]f the [c]ourt does not find the [Board] erred as stated in [p]oints [one] and [two]*," we find this argument inconsistent with the purpose of the statute. (emphasis added). Even *Complete Auto Body* cited by Organic discusses Section 536.090's purpose "so that the circuit court can review the agency's decision on the record to determine whether the agency engaged in any of the actions made reviewable by [S]ection 536.140.2 RSMo (2000)." 232 S.W.3d at 725 (citing *Weber v. Firemen's Retirement Sys.*, 872 S.W.2d 477, 480 (Mo. banc 1994) ("Without findings of fact and conclusions of law, the court has no basis for reviewing the agency's decision on the record to determine whether it violated any of the provisions of [Section] 536.140.2, which sets out the scope of review in contested cases.").

Under Section 536.090, a detailed summary of the evidence relied upon is not required. The basic facts upon which the decision rests are enough. *Friendship Village of South Cnty. v. Public Serv. Comm'n,* 907 S.W.2d 339, 346 (Mo. App. W.D. 1995). Moreover, the findings should be "sufficiently specific to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence." *Missouri Veterans Home v. Bohrer,* 849 S.W.2d 77, 80 (Mo. App. W.D. 1993).

Additionally, the Board's own ordinance, Section 1004.050, requires that

> [a]ll actions or decisions of the Board shall be taken by order, in which two (2) members must concur. Each order shall contain a statement of the grounds and any findings forming the basis of such action or decision, and the full text of the order and record of members' votes shall be incorporated in the minutes of said Board.

Here, the record contains a statement by the Board chair as follows:

10

As far as I'm concerned, the address, the numerical address and the street are, for me, what is the front of the building. That's my perception of what the front of a building is. So . . . earlier on in 2015 the Planning Commission decided on no front yards for drive-thrus [sic]. So given those two points and going out to the property and giving it much thought, I'm going to vote to deny it. I just don't feel there's enough of a hardship to go against what the Planning Commission decided on and even though those other 2 buildings have drive-thrus [sic], they were before this – but even if they weren't, we only go – we're only talking today about this property and in the 25 years I've been on this Board that's all I look at. I don't look at what other properties have or residences. So I'm going to vote to deny based on all of what I just said.

Based on the purpose of Section 536.090 to avoid inadequate findings and allow for meaningful review by the court, the findings and conclusions in the instant case contain the statement of the grounds and findings for the basis of the Board's decision, incorporated into the minutes of the Board meeting, and a record of the votes to deny the variance. We find this complies with the statutory requirement and is adequate for the purposes of review, as evident by our analysis of points one and two. Organic's third point is denied.

## Conclusion

The Board's decision is affirmed.

_____
Lisa P. Page, Presiding Judge

Gary M. Gaertner, Jr., J and
Angela T. Quigless, J. concur.

11